**Mark C. ANDERSON, et al., Appellants,**

v.

**Mark D. PEARSON, et al., Lake County, Respondents.**

**No. C8-86-1832.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Richard J. Sundberg, Minneapolis, for appellants.

Mark Signorelli, Duluth, for Mark D. Pearson.

Jerome J. Simons, Jr., Minneapolis, for Arthur, Chapman & Michaelson, P.A.

Joseph V. Ferguson, III, Duluth, for Norwest-Duluth.

Bruce L. Anderson, Lake Co. Atty., Michael H. Costley, Two Harbors, Jeffrey R. Brauchle, Minneapolis, for Lake County Housing and Redevelopment Authority.

Wayne E. Gilbert, Two Harbors, for City of Two Harbors.

Considered and decided by CRIPPEN, P.J., and LANSING and NIERENGARTEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Appellant challenges the trial court order requiring him to file a $1,780,000 bond as a condition to avoid dismissal of his lawsuit with prejudice. We reverse and remand.

## FACTS

In 1985, respondent Pearson and appellant Anderson were general partners in P & A Partners, which they formed to promote the construction of the "Superior Shores" project, a resort hotel complex. The partners agreed Anderson would obtain the necessary private financing and Pearson would secure public assistance for the project.

Pearson approached the Lake County Housing and Redevelopment Authority (HRA), Lake County, and the City of Two Harbors. Each of these public bodies committed substantial public funds to the project. In particular, the HRA issued $1.1 million dollars in tax increment financing bonds and Two Harbors agreed to extend public utilities to the project, using two federal grants totaling $1,176,500 and a State of Minnesota small cities grant of $150,000.

Anderson was unsuccessful in his applications to Norwest Bank-Duluth for mortgage financing. In April 1986 he signed a Mutual Waiver and Release agreement dissolving his relationship with Pearson regarding the Superior Shores project. Pearson agreed to pay Anderson $10,000 plus some other consideration in exchange for Anderson's withdrawal.

Pearson then took sole responsibility for the project and secured financing of over $2 million dollars from Norwest Bank-Duluth. Construction on the project began on September 22, 1986. On September 26, Anderson filed a *lis pendens* against the subject property and commenced this lawsuit, alleging five separate causes of action. The first alleged conversion of partnership property by Pearson, Norwest Bank-Duluth, Lake County, the investment counseling firm of Allison-Williams Co., and the law firm of Arthur, Chapman & Michaelson, P.A. The second alleged fraud in the inducement (to get Anderson to abandon his interest in the project) by Pearson, Allison-Williams, and Arthur, Chapman & Michaelson. The third alleged

breach of contract by Pearson. The fourth and fifth alleged negligent performance and non-performance of services by Allison-Williams and Arthur, Chapman & Michaelson.

Lake County, along with non-parties Lake County HRA and the City of Two Harbors, responded with motions asking the court to order appellant to file a surety bond.[1] In support of the motion, respondents argued that Norwest Bank would withdraw its mortgage financing unless construction began by October 20, 1986, that a $400,000 federal grant was conditioned on Norwest's financing of the project, that another federal grant of nearly $1 million was conditioned on a construction date of October 20, and that the loss of these major resources threatened the viability of the entire project. Respondents further argued that delay past October 20 would also force postponement of the entire project until the following spring, and that if the project was not "substantially constructed" by December 31, 1986, there would be insufficient tax revenues to repay the HRA bonds.

In support of their arguments, the movants offered the testimony of representatives of the general contractor, Norwest Bank-Duluth, and the City of Two Harbors. The trial court, however, declined to hear the offered testimony, citing time considerations.

Appellant Anderson responded that he had no desire to halt the construction of the Superior Shores project and that he did not question the validity of the public financing, the legality of any public contracts between the private developer and the public bodies, or the debt financing that had been arranged. Indeed, he desired that the project go forward according to the existing contracts. Rather, he argued against the unfairness of requiring a bond to continue what he characterized as primarily a "private suit" against Mark Pearson for the award of a one-half interest in the partnership out of which Mark Anderson claims he was defrauded.

The trial court granted respondents' motions and ordered appellant to file a bond of $1,780,000 within ten days or the court would dismiss the matter with prejudice. The court wrote in an accompanying memorandum that "a lot of people have put a lot of money on the line for a project that now seems on the verge of extinction," and "a bond may help to facilitate the project and allow [appellant] to pursue his actions. The bond would further protect the taxpayer * * *."

Although respondents' attorney had informed the court in a post-hearing letter that respondents' request for a dismissal with prejudice did not include the fraud and malpractice claims against Allison-Williams or Arthur, Chapman & Michaelson, the court dismissed all causes of action against all respondents with prejudice.

## ISSUE

Did the trial court abuse its discretion in ordering appellant to file a surety bond and in dismissing with prejudice all of appellant's causes of action for failure to file the bond?

## ANALYSIS

Section 562.02 of the Minnesota statutes was adopted in 1957 for the purpose of "discouraging vexatious lawsuits by irresponsible litigants." *Village of Elbow Lake v. Otter Tail Power Co.*, 281 Minn. 43, 46, 160 N.W.2d 571, 574 (1968). The statute gives the trial court discretion to require a party to file a surety bond "in such amount as the court may determine" when the party's action questions "the making of a contract for public improvement." Minn.Stat. § 562.02 (1984). According to the statute, the action "shall be dismissed with prejudice" if a required bond is not filed within the time allowed by

1. A court may order a plaintiff to file a surety bond if it determines that loss or damage to the public or taxpayers may result from the pendency of the plaintiff's action. Minn.Stat. § 562.02

(1984). Failure to file the bond within the time allowed by the court results in a dismissal with prejudice. *Id.*

the trial court. *Id.* The purpose of the bond is to protect the public or the taxpayers when "the court determines that loss or damage to the public or taxpayers may result from the pendency of the action * * *." *Id.*

Cases applying section 562.02 and similar statutes have typically involved suits for an injunction. *See, e.g., Elbow Lake,* 281 Minn. 43, 160 N.W.2d 571 (plaintiff sought to enjoin construction of municipal power plant); *Gram v. Village of Shoreview,* 259 Minn. 145, 106 N.W.2d 553 (1960) (plaintiff sought to enjoin construction of sanitary sewers); *Sisto v. Housing & Redevelopment Authority of Duluth,* 258 Minn. 391, 104 N.W.2d 529 (1960) (plaintiff sought to enjoin housing and redevelopment authority from constructing certain projects); and *Ashenbrenner v. City of East Grand Forks,* 257 Minn. 368, 102 N.W.2d 28 (1960) (plaintiff sought to enjoin construction of sewage disposal plant). In such cases the potential for detriment to the public is evident from the nature of the relief sought.

Appellant Anderson, however, is not seeking to enjoin the construction of the Superior Shores project. He asserts his agreement with the project's financing and his desire that the construction continue. He argues that his only goal is to regain his interest and right to participate in the project, a right he claims was lost due to fraudulent acts by some of the respondents. Under these circumstances, the parties must be permitted to present evidence to determine whether and to what degree appellant's lawsuit threatens to stop or damage the public improvement.

The mere involvement of Norwest Bank-Duluth and Lake County as defendants in the action is insufficient to justify an order under section 562.02. Rather, the complexities of the claims and the ramifications of the timing of this lawsuit on the viability of the Superior Shores project require evidence and findings on the need for a surety bond. The trial court's determination cannot be properly reviewed or affirmed without a record of the basis for its determination. *Custom Farm Services, Inc. v. Collins,* 306 Minn. 571, 572, 238 N.W.2d 608, 609 (1976).

In addition, the trial court did not distinguish between the causes of action that affect only the private defendants and those that concern the public interest. The statute only provides for surety bonds when damage to the "public or taxpayers may result." Minn.Stat. § 562.02 (1984). Respondents acknowledged this in their post-hearing letter to the trial court. On remand, the court should entertain respondent's motion to avoid dismissal of claims against private defendants, and should frame its order in accordance with this motion and the evidence in the record.

## DECISION

It was error to order the filing of a surety bond without receiving evidence on whether and to what extent the lawsuit may result in damage or loss to the public. The case is remanded for a hearing and findings consistent with the law and this opinion.

Reversed and remanded.